**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 11:28 AM September 20, 2012**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| SII LIQUIDATION COMPANY, | ) | CASE NO. 10-60702 |
| | ) | |
| Debtor. | ) | ADV. NO. 12-6035 |
| | ) | |
| DAVID A. SCHWAB, et al., | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| LAWRENCE E. OSCAR, ESQ., and | ) | **(NOT FOR PUBLICATION)** |
| HAHN LOESER & PARKS, LLP, | ) | |
| | ) | |
| Defendants. | ) | |

This adversary is a malpractice action by shareholders ("Plaintiffs")[1] of the consolidated debtors ("Debtors")[2] against Debtors' lead bankruptcy counsel. Plaintiffs advance individual counts, alleging an attorney-client relationship between themselves and Defendants, as well as

---

[1] Plaintiffs are David A. Schwab, Donna L. Schwab and Jerry A. Schwab.
[2] The consolidated Debtors are Schwab Industries, Inc.; Medina Cartage Co.; Medina Supply Company; Quality Block & Supply, Inc.; O.I.S. Tire, Inc.; Twin Cities Concrete Company; Schwab Ready-Mix, Inc.; Schwab Materials, Inc.; and Eastern Cement Corp.

1

derivative counts as shareholders of Debtors. Two motions to dismiss were filed in response to the amended complaint. The first was filed by the creditor trustee, John B. Pidcock ("Creditor Trustee"), on May 24, 2012. The second was filed on June 12, 2012 by defendants Hahn Loeser & Parks LLP ("Hahn Loeser") and Lawrence E. Oscar ("Oscar") (collectively "Defendants"). Plaintiffs responded to the motions and oppose dismissal. None of the parties requested oral hearing on the motions.

28 U.S.C. § 1334(a) provides the district court with original and exclusive jurisdiction of the underlying chapter 11 bankruptcy case. The court has original, but not exclusive, jurisdiction of the civil proceeding pursuant to 28 U.S.C. § 1334(b). In accordance with 28 U.S.C. § 157(a), the district court conferred its jurisdiction to the bankruptcy court by General Order 2012-7, the general order of reference, dated April 4, 2012. Under 28 U.S.C. § 1409, venue in this district and division is proper.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## **FACTUAL BACKGROUND**

On February 28, 2010, Oscar, an attorney with Hahn Loeser, filed chapter 11 petitions for Schwab Industries, Inc. and several related entities, collectively the "Debtors." Debtors were closely-held companies. Plaintiffs were shareholders and directors of Debtors.

On May 15, 2012, Plaintiffs filed an amended complaint for malpractice against Defendants in individual and derivative capacities. The specific counts include professional negligence/legal malpractice, fraudulent inducement, and negligent misrepresentation. Counts I, III and V are the derivative claims, Counts II, IV and VI are Plaintiffs' individual claims.

Plaintiffs allege that they consulted Defendants to represent both their interests as shareholders and to represent Debtors in a chapter 11 case. They insist that an attorney-client relationship existed between Defendants and them individually, as well as between Defendants and Debtors, and that Defendants owed duties to both Debtors and them. Plaintiffs contend that they were not advised of Oscar/Hahn Loeser's conflict with a creditor and never authorized employment of additional counsel to manage the conflict. They state they were not aware that liquidation was a possibility and filed a chapter 11 petition with the sole intent of reorganization and restructuring. Plaintiffs also complain specifically that Defendants failed to represent their interests and the interests of Debtors when it appeared that a favorable ruling from a state court increased the value of a substantial asset. Both the Creditor Trustee and Defendants moved to dismiss the amended complaint.

The application to employ Hahn Loeser as Debtors' bankruptcy counsel was filed contemporaneously with the petition. Paragraph forty-five of application identifies the following conflict:

2

> Specifically, as noted herein and as reported to Debtors,
> Hahn Loeser has represented and does represent BAL
> Global Finance, LLC ("BAL") which is an affiliate of Bank
> of America, N.A., a secured lender of Debtors ("BofA")
> in matters unrelated to Debtors. Debtors have been advised
> of Hahn Loeser's representation of BAL, and Debtors have
> engaged, subject to court approval, the Brouse McDowell
> law firm, to represent them in matters adverse to BofA.
> Under present circumstances Hahn Loeser will not represent
> Debtors or BofA in this engagement on matters where Debtors
> and BofA are directly adverse.

An application to employ Brouse McDowell, LPA ("Brouse") as special counsel was also filed on February 28, 2010. It states that Brouse's services will be "generally limited to matters that Hahn Loeser is unable to perform due to unavoidable conflicts." (Appl. To Employ Brouse McDowell ¶ 33, Main Case ECF No. 8) A Corporate Resolution, filed contemporaneously with the petitions, was executed on February 26, 2010 and signed by Plaintiffs J.A. Schwab, Donna L. Schwab, and D.A. Schwab as directors, and acknowledges and authorizes employment of Brouse McDowell as "conflicts and special counsel relating to the Corporation's chapter 11 case." (Corporate Resolution p. 2, Main Case ECF No. 2) David R. Exley, Vice President of Administration for Debtors, swore out an affidavit on February 28, 2010 acknowledging conflicts. (Aff. of David R. Exley In Support of Ch. 11 Petitions and First Day Motions ¶¶ 39-41, Main Case ECF No. 23) The application to employ Hahn Loeser was approved on March 24, 2010 and the order approving Brouse's representation was entered on March 29, 2010.

Debtors encountered further financial turmoil and progress of the case resulted in the sale of substantially all of Debtors' assets via auction. The court entered a sale order on May 28, 2010. Subsequently, the court confirmed a liquidation plan. (Order Confirming Ch. 11 Plan, Main Case ECF No. 698) Through the sale and plan, a creditor trust was established for the benefit of the unsecured creditors and John B. Pidcock was designated Creditor Trustee. (Notice – Plan Proponents Notice of Designation of Creditor Trustee, Main Case ECF No. 690)

Hahn Loeser submitted two fee applications, a first interim and a second interim/final application. The former was approved on August 9, 2010 and the latter was approved on March 11, 2011.

## DISCUSSION

The Creditor Trustee and Defendants' motions are brought under Federal Rule of Civil Procedure 12 as adopted into bankruptcy practice by Federal Rule of Bankruptcy Procedure 7012. They specifically rely on Rule 12(b)(1) and (6). In one argument, they claim that Plaintiffs' claims have been foreclosed by previous events, specifically the adoption of an exculpation clause in the confirmation order and the res judicata effect of orders awarding fees, thereby destroying the court's subject matter jurisdiction. Plaintiffs oppose dismissal on this ground, arguing that the

court does have subject matter jurisdiction because the claims are not "inescapably frivolous" and deny the applicability of res judicata. In a separate argument, Creditor Trustee and Defendants contend that the Plaintiffs have no standing because the claims belong to the estate/Creditor Trustee. Plaintiffs' counter-argument questions the standing of the Creditor Trustee because he declined to pursue the claims.

>   I.   Authority and Standards of Review

>   A.  Bankruptcy Court Authority

None of the parties discussed the court's jurisdiction. In the amended complaint, Plaintiffs allege this is a non-core proceeding. While the court has no desire to create a primer on bankruptcy jurisdiction, the court must determine its authority to hear this proceeding as required by 28 U.S.C. § 157(b) and (c). Under 28 U.S.C. § 157(b), a bankruptcy court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." The court is granted authority to enter orders and judgments, subject to appellate review. Id. In non-core actions, absent the parties' consent to the contrary, a bankruptcy court may hear a case, but "shall submit findings of fact and conclusions of law" for entry of a final judgment by the district court. 11 U.S.C. § 157(c)(1).

Circuit appellate courts generally find that malpractice actions against professionals employed by a bankruptcy debtor are proceedings that "arise in" a title 11 case, providing a bankruptcy court with the authority to enter final orders and judgments. *See, e.g.,* Baker v. Simpson, 613 F.3d 346 (2nd Cir. 2010); Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.), 505 F.3d 237 (3rd Cir. 2007); Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003); Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.), 163 F.3d 925 (5th Cir. 1999); HMT Inv. Corp. v. Kupetz (In re Kahlenberg Lumber Co., Inc.), 103 F.3d 138 (9th Cir. 1996) (unpublished). Several common threads run through the decisions. First, most recognize that bankruptcy malpractice claims, even though based on state law, would not exist outside of the bankruptcy case. Second, several courts link a malpractice claim against a bankruptcy professional as a matter concerning the administration of the estate, thereby creating a core claim under 28 U.S.C. § 157(b)(2)(A). Third, they point to the court's duty to oversee professionals employed during the case, as well as the court's obligation to maintain the integrity of the bankruptcy system. These connections to the bankruptcy case lead the courts to conclude that malpractice claims against professionals are intrinsically connected to the bankruptcy case and have their existence only through the case. Consequently, the claims "arise in" the case, pursuant to 28 U.S.C. § 157(b), providing the jurisdictional foundation for a bankruptcy court to hear and enter final judgments on the claims.

The majority of cases cited above involve an action by a debtor against a bankruptcy professional, making those cases facially distinct from the present action. The distinction is clearly without merit with respect to the derivative actions. Derivative actions are merely "suits by shareholder[s] to enforce a corporate cause of action." Price v. Gurney, 324 U.S. 100, 105 (1945). Since Plaintiffs are pursuing causes of action on behalf of the corporate debtors, the action is essentially one by Debtors against their attorneys, making the facts indistinguishable.

4

Consequently, there is no basis to deviate from the reasoning outlined above with respect to the derivative claims.

Plaintiffs' complaint also contains individual, non-derivative counts, direct actions by Plaintiffs, as shareholders, against Defendants. Plaintiffs, as the shareholders of Debtors, contend they had an attorney-client relationship with Defendants and sought advice from Defendants both on their own behalf and on behalf of the Debtors. The question is whether there is any basis to find that these claims do not "arise in" the bankruptcy case, thereby eliminating the basis for core jurisdiction.

Of the cases cited, Seven Fields is the most factually analogous. In Seven Fields, several creditors filed a professional malpractice action against the debtor's accountants in state court. Following removal to the bankruptcy court, the bankruptcy court determined that remand was not appropriate. The Third Circuit agreed, determining that the claims arose in the bankruptcy case. First, the claims the conduct alleged occurred during progress of the bankruptcy case. Second, the claims impugned the entire bankruptcy process and could not be severed from the bankruptcy case. The court ultimately concluded that

> it is clear to us that a malpractice action against an accountant for misconduct during the bankruptcy on which the bankruptcy judge relied in confirming the plan of reorganization, and in reliance on which the bankruptcy court approved the fees to the accountants, and on which appellants' representatives relied to their detriment in selling the assets to pay their claims, in a manner that contravenes the terms of the reorganization plan, constitutes a core proceeding, more specifically a proceeding "arising in" the bankruptcy, which is subject to federal jurisdiction and the final adjudicative authority of the bankruptcy court.

Seven Fields at 262-63 (footnote omitted).

Although the law in the Sixth Circuit is not as direct as the cases above, the court finds that Sixth Circuit case law compels the same conclusion. The Sixth Circuit also looks at the nature of the claims to determine whether they arise in a bankruptcy case. Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.), 930 F.2d 1132, 1144 (6th Cir. 1991) (citing 1 Collier on Bankruptcy ¶ 3.01[1][c][v]) (15th ed. 1990)). While state law provides the substantive law for the claims, this alone is not dispositive. 11 U.S.C. § 157(b)(3). Wolverine Radio advises courts to look at "both the form and substance of the proceeding to determine whether core status exists." Wolverine Radio, 930 F.2d at 1144 (citing Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)). When a claim cannot exist but for the bankruptcy, it will be deemed to be core. Sanders Confectionery Products, Inc. v. Heller Fin., Inc., 973 F.3d 474 (6th Cir. 1992).

5

The form of the action creates a façade for a non-core determination. The complaint is based on state law. The claims do not arise under the bankruptcy code, nor do they depend on bankruptcy law for their outcome. Both Plaintiffs and Defendants are non-debtor parties. If Plaintiffs are successful on their individual claims, no benefit with inure to the estate. However, these facts ignores the reality of the situation. At its core, this action is a collateral attack on the bankruptcy case. Plaintiffs allege that the entire filing was based on a misrepresentation and misunderstanding of how the case would progress. They allege that Defendants failed to disclose a conflict, thereby impugning Defendants' employment as counsel. Another allegation suggests that the sale of Debtors' assets did not fully recognize the value of those assets based on a late-developing fact. The factual underpinning of the claims depends on the bankruptcy case, making it difficult to comprehend how a malpractice action against bankruptcy counsel would not be deemed to "arise in" the bankruptcy case. Plaintiffs would not have any claims without the bankruptcy case. This nexus, where claims are "inextricably bound" to the bankruptcy case, establishes core status. *See* Lowenbraun v. Canary (In re Lowenbraun), 453 F.3d 314 (6th Cir. 2006).

The facts of this case are easily distinguishable from those in Browning v. Levy, 283 F.3d 761 (6th Cir. 2002). There, an action by the successor-in-interest to the chapter 11 debtor against debtor's former counsel was deemed to be non-core. They key difference was that the malpractice action against former counsel was not directly tied to the bankruptcy case. Rather, the alleged malpractice occurred during representation of the debtor in a pre-petition agreement resolving a dispute about control and ownership of the corporation. The malpractice was discovered during the bankruptcy, but was otherwise unconnected. Consequently, the court concluded "as claims of the successor-in-interest to the debtor against a non-creditor third party, they are not among the core proceedings arising under the Bankruptcy Code . . . ." Id. at 773. Unlike here, there was no argument that the claims actually arose in the bankruptcy case, nor were there inseverable ties between the malpractice action and the case. For this reason, Browning is not persuasive. Seven Fields is more representative of the facts of this case, providing a compelling analysis for jurisdiction.

Additionally, 28 U.S.C. § 1334(e)(2) provides a district court with exclusive jurisdiction of 11 U.S.C. § 327 issues. This strongly suggests that the employment of professionals in a bankruptcy case were matters that Congress thought were the sole responsibility of the appointing court. No grant or reservation of jurisdiction was provided to any other court, thereby establishing the preeminence of jurisdiction to the district court and, through the order of reference, to the bankruptcy court.

The sum of the above inescapably leads to the conclusion that both the derivative and individual claims set forth in the amended complaint arise in the bankruptcy case, thereby invoking the court's powers under 11 U.S.C. § 157(b)(1). Consequently, the court can enter final orders and judgments in this proceeding.

### B. Standard of Review

As previously stated, Creditor Trustee and Defendants' motions to dismiss are brought under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for "failure to state a claim upon which relief can be granted." Relief under Rule 12(b)(1) is rare because a court must conclude that "the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999) (citing Hagans. v. Lavine, 415 U.S. 528, 536-37 (1974)). The Sixth Circuit recognized that 'most complaints will not be so clearly insufficient as to warrant dismissal under Rule 12(b)(1), but instead should be handled under Rule 12(b)(6).' Wagenknecht v. U.S., 533 F.3d 412, 417 (quoting Apple, 183 F.3d at 480).

To avoid dismissal under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The reviewing court accepts the allegations as not only true, but also views them in the light most favorable to the plaintiffs. Gold v. Deloitte & Touche LLP (In re NM Holdings Co., LLC), 622 F.3d 613, 618 (6th Cir. 2010) (citation omitted). Legal conclusions are not entitled to similar countenance. Iqbal, 556 U.S. at 678.

Under Rule 12(d), if a 12(b)(6) motion contains "matters outside the pleadings that are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). This is pertinent because Hahn Loeser advocates the court's consideration of the prepetition engagement letter between Debtors and Hahn Loeser, attached to Hahn Loeser's motion to dismiss as exhibit A. Certain matters outside the pleadings are ripe for consideration:

> "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir.1997) (quotation omitted) (emphasis added). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997) (quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993)).

Amini v. Oberlin College, 259 F.3d 493, 503 (6th Cir. 2001). Hahn Loeser posits that the engagement letter is referenced in the amended complaint, but the court disagrees. A review of Plaintiffs' amended complaint reveals no direct reference to the prepetition engagement letter.

Although the complaint contains statements regarding the engagement, employment and hiring of Defendants (Am. Compl. ¶¶ 9, 40, 46, Adv. Case ECF No. 6), the court finds these references are non-specific and not sufficient to provide a basis for the court's consideration of the letter as part of the pleading.  Consequently, the court hereby excludes that exhibit from consideration, electing to proceed strictly under Rule 12(b)(6) and not convert the motions to dismiss into motions for summary judgment.  The court, however, will take judicial notice of the record in this adversary and the main case under the above authority.

## II.     Decision

### A.  Plaintiffs lack Standing

Creditor Trustee, joined by Defendants, and Plaintiffs challenge one another's standing to pursue the claims asserted in the amended complaint.  Plaintiffs claim that the Creditor Trustee does not have standing to seek dismissal of the complaint on two grounds.  First, he declined to pursue the claims and should not be permitted to thwart their efforts to do so.  Second, it is outside the scope of his duties as the Creditor Trustee to attempt to dismiss a claim that could benefit the estate.  The Creditor Trustee, in turn, contends that Plaintiffs do not have standing because the claims belong to the estate.  Additionally, he argues that Plaintiffs did not suffer a particularized injury because the Debtors held the attorney-client relationship, not Plaintiffs.

The Supreme Court frames standing as "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  Warth v. Seldin, 422 U.S. 490, 498-99 (1975) (footnote omitted) (citing Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).  The foundations of standing are "proof of actual injury, causation and redressability."  NicSand, Inc. v. 3M Co., 507 F.3d 442, 449 (6th Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

In the bankruptcy context, the first component for standing, the nature of the injury, is important because it often also serves to separate estate claims from non-estate claims.  *See* Stevenson v. J.C. Bradford & Co. (In re Cannon), 277 F.3d 838 (6th Cir. 2002).  When the harm is specific to debtor, it is an estate claim that belongs to a trustee, who 'stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy.'  Ahcom, Ltd. v. Smeding, 623 F.3d 1248, 1250 (9th Cir. 2010) (quoting Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir. 2005) ( citation omitted)).  'Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate.'  Cannon, 277 F.3d 838, 854 (citing Honigman v. Comerica Bank (In re Van Dresser Corp.), 128 F.3d 945, 947 (6th Cir. 1997) (quoting Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Trust), 25 F.3d 1281, 1284 (5th Cir. 1994))).  Plaintiffs do not have authority to pursue estate claims, so to maintain this action, they must establish the claims do not belong to the estate.

8

Here, no one disputes that the claims originally belonged to Debtors and that the claims became property of the bankruptcy estate upon filing under 11 U.S.C. § 541. Nor do the parties challenge the Creditor Trustee's right to pursue the claims on behalf of the estate. The question is whether any of the claims are not property of the estate and therefore claims that can be pursued by Plaintiffs.

Generally, a shareholder does not have the ability to maintain an independent action under the "shareholder standing rule," the 'longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action . . . ." Harker v. Troutman (In re Troutman Enter., Inc.), 286 F.3d 359 (6th Cir. 2002) (citing Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd., 493 U.S. 331, 336 (1990) (other citations omitted)). An exception exists when 'the complaining shareholder is injured in a way that is separate and distinct from [the] injury to the corporation.' B. & V. Distrib. Co., Inc. v. Dottore Co., LLC, 278 Fed.Appx. 480, 485-86 (quoting Crosby v. Beam, 47 Ohio St.3d 105 (1989) (other citations omitted)); *see also* Goldin v. Primavera Familienstiftung, Tag Assoc., Ltd. (In re Granite Partners, LP), 194 B.R. 318 (Bankr. S.D.N.Y. 1996). This specific harm to a shareholder creates a basis for an independent cause of action by the shareholder. Here, Plaintiffs have failed to identify a distinguishing injury or harm that is particular to them. Instead, the sum of their allegations points to an undervalued liquidation of Debtors' assets as the overriding injury, which harmed the corporation and merely flowed through to the shareholders and creditors. The harm was not specific to Plaintiffs. The failure to demonstrate a particularized injury creates a prudential limitation on a court's exercise of jurisdiction. Cannon, 277 F.3d 838, 853 (citing Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 474-75 (1982)).

Plaintiffs contend that since the Creditor Trustee waived pursuit of the claims, the door is now open for them to take up the claims. Plaintiffs offer no support for their position. Once a cause of action vests in a trustee, the debtor loses standing to pursue the action. Waldschmidt v. Commerce Union Bank (In re Bauer), 859 F.2d 438 (6th Cir. 1988) (citing Spence v. Pontack (In re Torvik), 83 B.R. 450, 456 (Bankr. W.D. Mich. 1988)); *see also* Bezanson v. Thomas (In re R & R Assoc. of Hampton), 402 F.3d 257 (1st Cir. 2005). In order for the cause of action to re-vest in another party, a trustee must abandon the claim. Mgmt. Investors v. United Mine Workers of Am., 610 F.2d 384 (6th Cir. 1979). Plaintiffs have not sought, nor has the court directed, abandonment. *See* Seinfeld v. Allen, 169 Fed.Appx. 47 (2nd Cir. 2006) (unreported); In re West Pointe Prop., L.P., 249 B.R. 273 (Bankr. E.D. Tenn. 2000). As a result, pursuit of estate claims rests with the Creditor Trustee, not Plaintiffs.

Further, Plaintiffs did not seek authority to maintain derivative claims on behalf of the corporation. The District Court for the Northern District of Ohio recognized that derivative actions like the one maintained by Plaintiffs are rare because the action does not belong to Plaintiffs. Maloof v. BT Commercial Corp., 2008 WL 650325 (N.D. Ohio 2008) (unpublished). Relying on Federal Rule of Bankruptcy Procedure 7023.1 and quoting Collier's on Bankruptcy, the court stated:

9

> [A]ny right of action or claim that the corporation has at
> the time the case is commenced will become part of the
> debtor's estate. The trustee or debtor in possession will
> normally be the sole person entitled to enforce that claim.
> *Shareholders of the corporation would not be able to
> institute a derivative action without prior authorization
> from the court,* which authorization would not be forth-
> coming unless there were a clear showing that a request
> had been made to the trustee or debtor in possession and
> that the trustee or debtor in possession had unjustifiably
> refused to seek to enforce the claim or had abandoned it.

Id. at * 2 (emphasis original) (citing 10 Collier on Bankruptcy ¶ 7023.1.03 (15th ed. rev. 2007) (footnotes omitted)). Since these claims do not belong to them, Plaintiffs need permission to pursue the claims. See Kemper v. Am. Broad. Co., Inc., 365 F.Supp. 1272, 1274 (S.D. Ohio 1973) (stating "[w]here a receiver or trustee has been appointed, as here, the trustee is an indispensable party to a shareholder's derivative suit, and the shareholder must therefore make demand on the receiver or trustee and also obtain the consent and authorization of the bankruptcy or receivership court to bring suit.") (citing Fields v. Fid. Gen. Ins. Co., 454 F.2d 682 (7th Cir. 1971); Bayliss v. Rood, 424 F.2d 142 (4th Cir. 1970); Stutts v. Waldrop, 377 F.2d 275 (5th Cir. 1967) (other citations omitted)). Permission was neither requested nor granted.

The amended complaint contains one paragraph addressing Plaintiffs' authority to pursue claims: "[n]o action was made by or on behalf of the Plaintiffs in an attempt to obtain the action desired from the directors or shareholders prior to bringing this action, as it would be futile where the company is defunct and the only other shareholder, Mary Lynn Schwab, is currently being sued by the Plaintiffs in a different matter." (Am. Compl. ¶ 36, Adv. Case ECF No. 6) This allegation is typical of the lack of understanding that permeates Plaintiffs' complaint and arguments: they do not appreciate or comprehend the line between where their personal interest ends and the interest of the Debtors, and now the Creditor Trustee, begins. As shareholders of the closely held Debtors, they demonstrate little awareness of the concept of Debtors as separate legal entities. Plaintiffs' allegation proves they do not realize that claims belong to the estate and that the Creditor Trustee controls the claims. Their failure to make a demand on the Creditor Trustee before instituting this action was imprudent. Plaintiffs do not have standing to pursue the derivative claims.

### III. Plaintiffs' Claims are Barred by Res Judicata

Relying on previous orders approving fee applications filed by Defendants, Creditor Trustee and Defendants argue that the court does not have subject matter jurisdiction over the claims because they are barred by res judicata. They request dismissal of the complaint under Rule 12(b)(1). Plaintiffs disagree, maintaining that res judicata cannot bar the current claims because they didn't know of the alleged malpractice and therefore could not have raised their claims at the time of the fee application.

Four elements must be established in order for the malpractice claim to be precluded by the order awarding compensation: '(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.' Browning, 283 F.3d at 771-72 (quoting Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 880 (6th Cir.1997)). Plaintiffs do not challenge the elements of res judicata. Instead, they argue that "even when all of the elements of res judicata are satisfied, a malpractice claim remains viable unless a party could and should have brought the causes of action in a former proceeding." (Plaintiffs' Responses to Motions to Dismiss, p. 5, Adv. Case ECF Nos. 17 and 39) (relying on Penthouse Media Grp., Inc. v. Pachulski Stang Ziehl & Jones LLP, 406 B.R. 453 (S.D.N.Y. 2009)). According to Plaintiffs, they only learned of the potential malpractice claim upon consulting current counsel and therefore could not have brought their claims at the time of either the first interim or second/final fee applications. Plaintiffs' actual knowledge of their right to pursue a malpractice claim does not drive the determination. Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC, 569 F.3d 485 (C.A. D.C. 2009). "Rather than considering whether [Plaintiffs] knew of the precise legal contours of their malpractice claim at the time of the fee application, we must instead determine whether they knew of the factual basis of that claim." Iannochino v. Rodolakis (In re Iannochino), 242 F.3d 36, 49-50 (1st Cir. 2001).

Three different events purportedly underlie Plaintiffs' malpractice claims. First, they contend that they were unaware, until after the bankruptcy case was filed, that there was a conflict with a creditor. (Am. Compl. ¶ 16, Adv. Case ECF No. 6) The court rejects this argument outright. The Corporate Resolution signed by Plaintiffs, J.A. Schwab, Donna L. Schwab, and David A. Schwab prior to the bankruptcy filing contains a resolution authorizing the employment of Brouse McDowell as conflicts counsel. (Corp. Resolution, p. 2, Main Case ECF No. 2) The conflict is disclosed in both the application to employ Hahn Loeser and the application to employ Brouse. Debtors' Vice President of Administration also acknowledged conflicts in an affidavit filed in support of the petitions and first day motions, executed on February 28, 2010. Plaintiffs' argument that they were not informed of the conflict is not plausible.

Alternatively, Plaintiffs argue that they were not informed that liquidation was a possible outcome of the bankruptcy filing. (Am. Compl. ¶ 32, Adv. Case. ECF No. 6) Additionally, they contend that Defendants failed to adequately represent their interests in this bankruptcy proceeding. According to Plaintiffs, three days before the sale of Debtors' assets, they received good news from a Florida court which positively affected the value of their assets and that Defendants failed to do everything possible to have this new information considered by creditors or the court. (Am. Compl. ¶¶ 23-32, Adv. Case ECF No. 6) Even accepting these allegations at face value, Plaintiffs' arguments suffer a timing problem.

Defendants' second and final fee application was filed in January 2011 and served to Debtors, at the Dover headquarters, on January 14, 2011. All of the actions cited by Plaintiffs as grounds for malpractice occurred either before or at the time of the sale of Debtors' assets,

11

approved by the court on May 28, 2010.[3] "Debtors' homegrown enterprise was sold off, piece by piece leaving nothing but completely defunct corporations" (Am. Compl. ¶ 31, Adv. Case ECF No. 6) months before the final fee application. In spite of their dissatisfaction, Plaintiffs did not lodge an objection with the court.[4] Plaintiffs knew, at the time of the final fee application, of the alleged facts underlying a potential malpractice claim. *See* Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003).

Plaintiffs' reliance on the Penthouse case is misplaced because the facts make it easily distinguishable. In Penthouse, the debtors filed bankruptcy in September 2003 and confirmed a plan in August 2004. The plan required the debtors to serve notice of a rejection claims bar date to employees to protect the debtors from payment of severance packages under prepetition employment contracts. Counsel for debtors failed to timely send the notice. The debtors' counsel final fee application was approved on November 30, 2004, approximately one month after a severed employee first demanded $320,000. The appellate court found "no evidence that [the debtors] made a 'link' between [the employee's] demand for severance and a potential malpractice claim . . . until six months after the fee hearing, when [the employee] first raised the issue of notice." Penthouse, 406 B.R. at 463. The court pointed out that counsel had affirmatively represented to the debtors that the notice had been properly served. The import of these findings was that the debtors did not have constructive knowledge of the malpractice claim at the time of the final fee application. The court cannot reach the same conclusion in this case.

Not only is the court convinced that Plaintiffs reasonably should have known of their potential claims by the time the final fee application was filed, but is equally convinced, based on Plaintiffs' allegations, that Plaintiffs reasonably should have known of the alleged claims earlier in the case. By their own statements in the first day motions, Debtors filed because they were experiencing a liquidity "crisis." (M. Jt. Admin. ¶ 26, Main Case ECF No. 6) They filed intending to secure post-petition financing in order to continue operations. (Corporate Resolution, pp. 3-4, Main Case ECF No. 2) However, Debtors' request for post-petition financing was denied on March 22, 2010, largely based on the court's valuation of Debtors' Florida citrus grove/limestone quarry. At this point, Debtors did not have funding to continue operations because any cash served as collateral, (Agreed Order Authorizing Limited Use of Cash Collateral ¶ K, Main Case ECF No. 202), and use of the cash collateral was contested. Paragraph nineteen of the amended complaint recognizes the situation: "[a]s the bankruptcy case proceeded, the financial situation of the Debtors began to deteriorate as the creditors denied opportunities to reconcile debt and denied possible financing options." The final order authorized use of cash collateral only through June 21, 2010. (Final Agreed Order Authorizing Limited Use of Cash Collateral, Main Case ECF No. 280) Consequently, Debtors' options were extremely limited and a motion for sale of Debtors' assets via an auction was filed on April 5, 2010. That document was served to Debtors at their Dover headquarters. (Cert. of Service, Main Case ECF No. 250) On or about May 2, 2010, Plaintiff David Schwab, as president of the individual debtors, signed the asset purchase agreement with the stalking horse bidder. (Notice of

---

[3] The court does recognize that the first fee application was filed very shortly after the court approved the sale of Debtors' assets.
[4] Defendants contend that Plaintiff David Schwab approved the fees but failed to substantiate this statement.

12

Designation of Stalking Horse Bidder, Main Case ECF No. 346-1) Clearly, one of the Plaintiffs not only had knowledge of the impending liquidation, but was working in tandem with counsel toward liquidation. Plaintiffs also were actively involved in the auction process. There is a disconnect between the facts and Plaintiffs' arguments. Plaintiffs clearly should have known of any potential malpractice issues they had against Defendants when the fee applications were filed. Any dissatisfaction with Defendants' services should have been litigated during the fee application process. Plaintiffs' current attempts to raise malpractice claims is an impermissible attack on the final orders approving the fee applications and therefore is barred under the doctrine of res judicata.

## CONCLUSION

Malpractice claims against a debtor's bankruptcy counsel are causes of action that "arise in" a bankruptcy case and the bankruptcy court is therefore granted authority to enter final orders and judgments on those claims. The claims are property of the estate and therefore must be pursued by and on behalf of the estate. In this case, that torch has been passed to the Creditor Trustee. As shareholders of Debtors, Plaintiffs did not identify any particularized injury to separate their claims from the corporate claims now part of the estate. Further, Plaintiffs did not request or obtain authority to maintain any action. The amended complaint will be dismissed based on Plaintiffs' lack of standing.

Even if Plaintiffs had standing, the court finds that the claims presented are barred by res judicata. Plaintiffs' argument that they were not aware of the claims in time to contest the fee applications is not well-taken. Looking at the facts in the light most favorable to Plaintiffs, and accepting each as true, Plaintiffs had, or should have had, constructive knowledge of the claims in time to contest the fee applications. Their failure to do so bars the claims now.

The court grants Creditor Trustee's and Defendants' motions to dismiss. An order will be entered immediately.

# # #

**Service List:**

Jon D. Parrish
Parrish Lawhon & Yarnell
3431 Pine Ridge Road
Suite 101
Naples, FL 34109

Carrie M Brosius
John Winship Read
Vorys Sater Seymour&Pease LLP
2100 Cleveland Center
1375 E Ninth St
Cleveland, OH 44114-1724

Thomas R. Fawkes
Freeborn & Peters LLP
311 S. Wacker Drive
Suite 3000
Chicago, IL 60606

14