**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 01:39 PM January 22, 2014**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| SII LIQUIDATION COMPANY, | ) | CASE NO. 10-60702 |
| | ) | |
| Debtor. | ) | ADV. NO. 12-6035 |
| _____ | ) | |
| DAVID A. SCHWAB, et al., | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| LAWRENCE E. OSCAR, ESQ., et al., | ) | **(NOT FOR PUBLICATION)** |
| | ) | |
| Defendants. | ) | |

      On September 20, 2012, the court entered an opinion dismissing Plaintiffs' malpractice complaint against Debtors' bankruptcy attorneys, finding Plaintiffs lacked standing and that the claims were barred by res judicata. The decision was not appealed but on September 20, 2013 Plaintiffs David A. Schwab and Donna L. Schwab[1] ("Moving Plaintiffs") filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(1), (2), (3) and (6), as adopted into bankruptcy practice by Federal Rule of Bankruptcy Procedure Rule 9024. Defendants oppose the

---

1 Plaintiff Jerry A. Schwab apparently does not join the motion.

relief. The court held a hearing on November 5, 2013 and provided time for briefing. Both parties have filed additional papers and the court denied a request for further hearing.

The underpinnings of the court's basis for its exercise of jurisdiction were outlined in the previous opinion and are not challenged.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## **BACKGROUND**

The court finds no need to restate the facts outlined in the previous decision. However, it will summarize its conclusions of law. First, the court found that Plaintiffs lacked standing to bring the lawsuit because they identified no specific harm to themselves, separate and apart from any injury to the corporation, that created individual shareholder standing. Additionally, the court found that Plaintiffs had failed to obtain authority to pursue derivative claims on behalf of the corporation, those claims now belonging to the Creditor Trustee/estate. Finally, the court found the claims were barred by res judicata because they should have been raised at the time the court decided Defendants' fee applications.

In the motion for relief, the Moving Plaintiffs allege that new conflicts of interest between bankruptcy counsel and the secured creditors have come to light, providing previously unknown grounds for relief. Key to their claim is discovery that attorney Andrew Krause prepared a trust and split dollar agreement ("Trust") for Plaintiff Jerry Schwab in 1992. Huntington National Bank ("Huntington") was designated trustee. Mr. Krause later became an attorney with Defendant Hahn Loeser & Parks LLP ("Hahn Loeser").

In 2009, the Trust advisory committee wanted Huntington to assign life insurance contracts to the secured creditors. In response, Huntington obtained Mr. Krause's legal opinion on the advisory committee's proposed action. The Moving Plaintiffs claim Huntington was ill-advised by the opinion, was deleterious to the bankruptcy case, and was also a conflict of interest. The Moving Plaintiffs claim they only learned of this conflict on May 3, 2013. They also cite multiple other conflicts of interest by both Hahn Loeser and special conflicts counsel, Brouse McDowell,[2] which they claim were not known in time to object to the fee applications. They ask that the dismissal be set aside and that the court order disgorgement of Hahn Loeser's fees.

Recognizing the standing issue, the Moving Plaintiffs state that it is their "intention to either obtain commitment from the Creditor/Trustee to pursue the malpractice claims against [Hahn Loeser, Brouse McDowell] and other parties responsible for damages, or, in the alternative, obtain an assignment of those rights to allow Plaintiffs to move forward to establish the numerous claims that have resulted . . . ." (M. Relief from Judgment, p. 32, ECF No. 47-1)

---

2 The law firm of Brouse McDowell is not a defendant in this action.

**DISCUSSION**

**I.  Standing**

Motions for relief from judgment are governed by Federal Rule of Civil Procedure 60, incorporated in Bankruptcy Rule 9024.  The rule provides six grounds upon which the court can grant a party relief from a final judgment or order.  Moving Plaintiffs have cited four of the six grounds as a basis for the relief they seek:  60(b)(1), (2), (3), (6).  Although each provisions lists an independent ground for relief, each provision has been interpreted to require a movant to demonstrate that granting relief would ultimately change the outcome on the underlying claim(s). *See, e.g.,* Yeschick v. Mineta, 675 F.3d 622, 629 (6th Cir. 2012) (listing "whether the party holds a meritorious defense" as one factor in the 60(b)(1) analysis); Good v. Ohio Edison Co., 149 F.3d 413 (6th Cir. 1998) (finding that newly discovered evidence under 60(b)(2) must be such as to warrant a different outcome to the underlying judgment); Demjanjuk v. Petrovsky, 10 F.3d 338, 352 (6th Cir. 1993) (stating "only actions that actually subvert the judicial process can be the basis for upsetting settled decrees" for fraud on the court); Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir. 1990) (concluding that 60(b)(6) relief is for "unusual and extreme situation where principles of equity *mandate* relief" (italics original)).  Upon review, the Moving Plaintiffs have not met this hurdle.  It's the cart before the horse problem.  In their motion for relief, the Moving Plaintiffs allege that they have new information to support claims the court found they were not entitled to bring.

Plaintiffs did not challenge the standing decision.  Instead, they now indicate "it is Plaintiffs' intention to either obtain commitment from the Creditor/Trustee to pursue the malpractice claims against [Hahn Loeser, Brouse McDowell] and other parties responsible for damages, or, in the alternative, obtain an assignment of those rights . . . ."  (Mot. for Relief from J. at 32, ECF No. 47-1)  A review of both the main case docket and adversary docket show nothing toward either end.  And it must be noted that the Creditor Trustee is one of the parties who sought to dismiss Plaintiffs' action in the first place, claiming the claims were barred by the exculpation clause, res judicata, and that Plaintiffs lacked standing.

Even if Plaintiffs are able to obtain an assignment, the court is not convinced it will cure standing.  "A plaintiff's standing to sue is determined 'as of the time the complaint is filed.'" Coast Candidates PAC v. Ohio Elections Comm'n, 2013 WL 4829216, * 5 (6th Cir. 2013) (unreported) (citing Cleveland Branch, NAACP v. City of Parma, 263 F.3d 513, 524 (6th Cir. 2001)).  If the Moving Plaintiffs obtain an assignment now, it will mean that standing to sue is not determined as of the filing of the complaint, but as of the time the assignment is executed.  This has been rejected by courts in other situations.  For example, in patent cases, courts have used the following reasoning to prohibit standing to be cured by nunc pro tunc assignments:

> As a general matter, parties should possess rights before seeking
> to have them vindicated in court.  Allowing a subsequent assign-
> ment to automatically cure a standing defect would unjustifiably
> expand the number of people who are statutorily authorized to sue.

3

> Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

Procter & Gamble Co. v. Paragon Trade Brands, Inc., 917 F.Supp. 305, 310 (D. Del. 1995); Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1010, 1093-94 (Fed. Cir. 1998); Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774, 779 (Fed. Cir. 1996); *see also* Sharehold Representative Serv. LLC v. Sandoz, Inc., 2013 WL 4015901 (S.D.N.Y. 2013) (reporter citation not yet available). Some state courts have reached similar conclusions in foreclosure cases where the note or mortgage actually was assigned after the complaint was filed. Fed. Home Loan Mortg. Corp. v. Schwartzald, 134 Ohio St.3d 13 (2012); Deutsche Bank Nat'l Tr. Co. v. Gilbert, 982 N.E.2d 815 (Ill. App. Dist. 2012); Wells Fargo Bank, N.A. v. Marchione, 69 A.D.3d 204 (N.Y. App. Div. 2009) *cf.* IndyMac Bank v. Miguel, 117 Haw. 506 (Haw. Int. Ct. App. 2008). The court is unwilling to oppose precedent to allow a post-complaint assignment to confer standing on a plaintiff who has already filed a complaint.

The Moving Plaintiffs did not have standing when the complaint was filed and have done nothing to cure the lack of standing. Consequently, their arguments concerning the substance of the underlying claims are immaterial.

## II. The Huntington conflict

The Moving Plaintiffs' main contention is that they were not aware of a conflict of interest between Defendant Hahn Loeser and Huntington when they agreed to hire Hahn Loeser as bankruptcy counsel for Debtors. They claim they learned of the conflict in May 2013. Court documents and other evidence show this to be incorrect. The application to employ Hahn Loeser contains an entire paragraph dedicated to describing the conflict:

> In a matter concluded in September 2009, Hahn Loeser represented The Huntington Trust Co. of Florida, as Trustee (the "Trustee") of an irrevocable insurance trust established by an equity holder of Schwab Industries, Inc. (the "Trust"). The Trustee is an affiliate of The Huntington National Bank ("HNB"). Hahn Loeser does not believe that its past representation of Trustee precludes Hahn Loeser from representing the Debtors in any matters involving HNB, or in any matters involving the Trustee (except as relates to the Trust). Debtors have been advised of Hahn Loeser's past representation of the Trustee, and Debtors are concurrently seeking retention of certain ordinary course professionals to represent

4

> Debtors in matters adverse to the trustee in respect of the Trust.
> Under present circumstances Hahn Loeser will not represent
> Debtors or the Trustee on matters pertaining to the Trust where
> Debtors and the Trustee are directly adverse.

(App. to Employ Hahn Loeser ¶ 46, ECF No. 7) Defendants provided a copy of an email from Defendant Lawrence Oscar to Plaintiff David Schwab, dated Wednesday, February 17, 2010, specifically addressing the conflict and proposing the disclosure that became paragraph forty-six of the employment application. (Def.'s Resp. Ex. A, ECF No. 59)

Moving Plaintiffs point out that the conflict is not disclosed in the engagement agreement dated January 21, 2010 and signed by David Schwab on January 23, 2010. What they fail to note, however, is the statement in which Hahn Loeser declares "[w]e will inform you and expect that you will inform us of any additional potential conflicts which either of us may discover throughout our relationship." (Pl's Mot. for Relief Ex. 3, ECF No. 48-2) Slightly under one month later, that appears to be exactly what Hahn Loeser did.

Additionally, the conflict was also mentioned postpetition in a separate email from Defendant Oscar to the Moving Plaintiffs. Although the copy of the email provided does not include the date, the Moving Plaintiffs state it was sent on April 23, 2010. (Pl.'s Supp. Br., p. 4, ECF No. 64) This was before the sale and before either of Hahn Loeser's fee applications were filed. When informing Moving Plaintiffs of Huntington's decision regarding a $3,000,000 loan from the cash value of the insurance policies held in trust, and advising of their options, Defendant Oscar included the following paragraph:

> Alternatively, SII could seek to compel Huntington Trust in a
> court action to reverse its decision not to obtain the $3 million
> cash value loan. As you know, we have previously represented
> Huntington Trust related to the Insurance Trust so we could not
> bring such a court action, but Marc Merklin could. Whether
> such an action would be successful in the time frame necessary,
> I do not know.

(Pl.'s Mot. to File Supp. Br. Ex. E, ECF No. 57-1) This clearly shows that the Moving Plaintiffs had knowledge of the specific conflict at least three years earlier than they've claimed in their motion for relief. The Moving Plaintiffs knew, or should have known, of the conflict in time to challenge Defendants' fee applications filed on July 22, 2010 and January 13, 2011. The court therefore finds that res judicata remains a bar to assertion of any claims related to this alleged undisclosed conflict.

The above doesn't consider Defendants' arguments that the Schwabs had possession of the Krause letter much earlier than May 2013 as alleged. According to Defendants, the Schwabs themselves produced the Krause letter to Huntington on or about November 23, 2011 in litigation in another adversary proceeding in this case. Defendants have provided a copy of an email, dated

5

November 23, 2011, from a Brouse McDowell attorney to attorney Marcel Duhamel, which purportedly included a Bates stamped ("SCHWABS 00062") copy of the Krause letter from 2009. (Def.'s Resp. in Opp. to Supp. Br. Ex. B, ECF No. 66-2)   Based on this, it appears the Schwabs did know, or had reason to know, of the nature of the conflict well before May 2013 and before the filing of this complaint.

For the purposes of Rule 60(b)(2), "new" evidence is determined by looking through a "reasonable diligence" lens.   In other words, the date that Moving Plaintiffs became aware of the conflict is immaterial if there is proof they could have learned of the conflict earlier through the exercise of reasonably diligent efforts.   Green v. Bank of Am. Corp., 530 Fed.App'x 426, 430 (6th Cir. 2013) (citing HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 615 (6th Cir. 2012); Crawford v. TRW Automotive U.S. LLC, 2008 WL 1902220, at *3 (E.D. Mich. April 30, 2008)).   Even if the court were to accept the contention that Moving Plaintiffs were not aware of the conflict until May 2013, it is clear that reasonable efforts would have led them to the conflict much earlier. Therefore, in addition to being barred by res judicata, the court finds insufficient grounds for relief under Rule 60(b)(2).

Finally, in light of the above information concerning the disclosure of the Huntington conflict, the court cannot find that Moving Plaintiffs' motion for relief is timely.   "The limits of reasonable time 'ordinarily depend [] on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief.'"   Thompson v. Bell, 580 F.3d 423, 452 (6th Cir. 2009) (citing Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir. 1990) (other citation omitted)). As stated previously, Plaintiffs either knew or should have known, with the exercise of reasonable diligence, of the conflict much earlier than May 2013.   In fact, it appears Plaintiffs should have been able to include a claim based on the Huntington conflict in their original complaint.   Their failure to do so does not move the court to the exercise of its equitable powers to consider relief from judgment.   Moving Plaintiffs failed to appeal the previous judgment, then waited a year to seek relief from the judgment.   This delay is clearly prejudicial to Defendants, who thought the matter was closed.

## **CONCLUSION**

Moving Plaintiffs have not cured the standing problems identified in the court's previous order and are unable to do so after the fact.   Consequently, relief from judgment is not warranted.

Additionally, the court finds that the Moving Plaintiffs either knew, or should have known, of the Huntington conflict much earlier than the claimed date of May 2013.   The court finds that the conflict was disclosed in time to contest Defendants' fee applications and the failure to do so means claims that could have been brought at that time are now barred by res judicata.   Further, if the Plaintiffs had made reasonably diligent efforts, they should have known of the conflict in time to include the claims in their malpractice action.   The information therefore cannot be considered "new" for the purposes of relief under Rule 60(b)(2).

Finally, the court finds that the Moving Plaintiffs' motion for relief from judgment is not timely. Plaintiffs' claim that they only learned of the conflict in May 2013 is not supported by the record. Plaintiffs had information which would have led them to discovery of the conflict much earlier. Granting relief would prejudice the Defendants and be an inappropriate use of the courts equitable powers under the circumstances.

The motion for relief will be denied by separate order to be entered immediately.

#   #   #

**Service List:**

Charles V. Longo
25550 Chagrin Blvd., Ste 320
Beachwood, OH 44122

Jon D. Parrish
Parrish Lawhon & Yarnell
3431 Pine Ridge Road
Suite 101
Naples, FL 34109

Jack B Cooper
Day Ketterer
200 Market Ave N
#300
Canton, OH 44701-4213